MERCHANTS' COAL CO. v. FAIRMONT COAL CO. et al.

(Circuit Court of Appeals, Fourth Circuit.   January 15, 1908.)

No. 779.

1. JUDGMENT—PERSONS CONCLUDED—EFFECT AS BAR TO SUBSEQUENT PROCEEDING.

The judgment of a federal court in a mandamus suit brought by a coal company operating mines on the line of a railroad against the railroad company to compel a fair distribution of cars, upon an allegation of discrimination in violation of the interstate commerce law, does not inure to the benefit of any other operator not a party to the suit, nor bar an independent suit or proceeding by such operator on its own behalf in court or before the Interstate Commerce Commission to secure similar relief; nor is it estopped to maintain such independent suit or proceeding by the fact that it aided the relator in the prior suit or contributed to the expense thereof.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, §§ 1190, 1191.]

2. CARRIERS—INTERSTATE COMMERCE ACT—CUMULATIVE REMEDIES FOR VIOLATION.

An action in a federal court for a mandamus, under Act March 2, 1889, c. 382, § 10, 25 Stat. 862 [U. S. Comp. St. 1901, p. 3172], amendatory of the interstate commerce act, which authorizes such action by a shipper against an interstate carrier to compel a compliance with the act, and further provides that "the remedy hereby given by writ of mandamus shall be cumulative, and shall not be held to exclude or interfere with other remedies provided by this act or the act to which it is a supplement," does not preclude the relator or others from proceeding in respect to the same matter by petition to the Interstate Commerce Commission under section 13 of the original act of Feb. 4, 1887, c. 104, 24 Stat. 383 [U. S. Comp. St. 1901, p. 3164], and the court in the mandamus suit is without power on an ancillary bill to enjoin such proceeding.

Appeal from the Circuit Court of the United States for the District of Maryland.

William A. Glasgow, Jr., and George Weems Williams (Frank Gosnell, on the brief), for appellant.

Edgar H. Gans (Charles Markell, Jr., on the brief), for appellees.

Before PRITCHARD, Circuit Judge, and PURNELL, District Judge.

PRITCHARD, Circuit Judge.   This is an appeal from an order or decree of the Circuit Court of the United States for the District of Maryland passed on the 21st day of October, 1907, granting a preliminary injunction restraining the appellant from prosecuting its petition against the Baltimore & Ohio Railroad Company before the Interstate Commerce Commission, and restraining the said railroad company from answering or defending said petition.   On the 4th day of October, 1907, the appellees, who are the Fairmont Coal Company, Clarksburg Fuel Company, Southern Coal & Transportation Company, Pittsburg & Fairmont Fuel Company, Somerset Coal Company, Consolidation Coal Company, and Cumberland & Pennsylvania Railroad Company, and who, with the exception of the Cumberland & Pennsylvania Railroad Company, are engaged in the mining, shipping, and selling

of coal, filed their bill of complaint in equity against the appellant, which is a West Virginia corporation, also engaged in the mining, shipping and selling of coal, and against the Baltimore & Ohio Railroad Company, which is a Maryland corporation engaged as a common carrier in interstate commerce. The object of the bill was to have the appellant enjoined from prosecuting its petition before the Interstate Commerce Commission against the railroad company, and to restrain the railroad company from answering or defending said petition. The bill of complaint alleges substantially as follows:

That in January, 1907, there was filed in the Circuit Court of the United States for the District of Maryland a petition for mandamus by the United States of America ex rel. Pitcairn Coal Company, against the Baltimore & Ohio Railroad Company and certain other corporations (154 Fed. 108), all of which other corporations were organized under the laws of West Virginia for the purpose of mining and disposing of coal, and operated coal mines grouped about the Monongah division of the Baltimore & Ohio Railroad in West Virginia. That said petition for mandamus substantially charged the Baltimore & Ohio Railroad Company with violating the interstate commerce law in such a way as to prevent the relator, the Pitcairn Coal Company, from having interstate traffic moved by that railroad company upon terms and conditions as favorable as those given by the railroad company for like traffic under similar conditions to those who are complainants in said bill of complaint. That said petition for mandamus charges that the railroad company, in its distribution and assignment of cars for service in shipment from the coal mines operated along its road, subjected the relator and all of the other independent coal operators who were made defendants in said petition to undue and unreasonable prejudice and disadvantage in its system of coal distribution, and that all of those who are now the complainants in said bill of complaint, except the Cumberland & Pennsylvania Railroad Company, were privileged corporations in whose favor the railroad company in the supply of cars gave undue and unreasonable preference and advantage, and that when the supply of cars on the Baltimore & Ohio Railroad Company was insufficient to fill all orders cars were distributed by said company on a percentage basis to all the mines in the Monongah division, but that before such distribution was made certain arbitrary assessments of cars were made reducing the said total number of cars to be distributed on said percentage basis as follows: (1) All cars placed at mines for the fuel of the railroad company were not charged against the percentages to which the mines furnishing such fuel were entitled. (2) When foreign railroads—that is, companies other than the Baltimore & Ohio Railroad Company—sent their own cars for coal to mines on the Baltimore & Ohio Railroad, such fuel cars were not charged against the percentages to which such mines were entitled. (3) Cars owned by operators and commonly known as "individual cars" were placed at the mines of their owner, and not charged against the percentages of such mines. (4) That whenever a coal shipper on the railroad company shipped cars to Curtis Bay, a tide terminal of the railroad company, if such cars were handled prop-

erly in any one month such shipper was allowed in the succeeding month a premium of fifty per cent. of the number of cars so shipped in addition to his regular percentage. (5) That when certain consignees of coal shipped by those who are now complainants in said bill of complaint, on the line of said railroad company sent their own individual cars for coal to the mines of said complainants on the railroad such cars were not charged against the percentage of the mines to which they were sent.

That the petition for mandamus further asserted that all of these exceptions, limitations, and rules as aforesaid were made to the undue advantage and preference of the appellees, except the Cumberland & Pennsylvania Railroad Company, which is not a coal company, and for the reason that the Baltimore & Ohio Railroad Company was financially interested in said corporation, and that the Baltimore & Ohio Railroad Company arbitrarily took from its equipment a very large number of cars each day, and assigned the same to the Cumberland & Pennsylvania Railroad Company at its junction with the Baltimore & Ohio Railroad Company at Cumberland, and thus took from its equipment a large number of cars to which the shippers on its own lines were entitled, and this arbitrary allotment of cars was unjust, unfair, and unreasonable, and gave an undue and unreasonable advantage to shippers over the Cumberland & Pennsylvania Railroad Company, and subjected the Pitcairn Coal Company and other shippers of coal on the Monongah division to undue and unreasonable prejudice and advantage. That the petition further stated that the motive for the undue preference and advantage given to the appellees was found in the ownership by the railroad company of a majority of the capital stock of the Consolidation Coal Company, one of the defendants in said petition and one of the appellees herein, which had been sold prior to the filing of said petition, but in which the railroad company was still interested by reason of the balance of the purchase money due to it from the sale of said stock. That the petition prayed that in the event of a scarcity of cars to be furnished by the railroad company to shippers of coal on the Monongah division that the railroad company be required to furnish the relator with the proper percentage of cars without deducting the arbitraries above mentioned. That the railroad company on February 15, 1907, filed its return to said petition, wherein it denied that its distribution of coal cars to any coal company served by it violated the interstate commerce law, or had the effect of giving the appellees any undue advantage or preference. That the appellees filed an answer to the petition (a copy of the answer was filed as an exhibit with and as a part of the bill of complaint), and that the other defendants filed formal answers to the said petition (a copy of one of said answers was filed as an exhibit and as a part of said bill of complaint) asking that their rights might be adjudicated and determined.

That when said petition for mandamus was at issue the court took evidence on all the allegations thereof as the same were put in issue, and after a full hearing, adjudicated all matters involved in said mandamus proceeding, determining that the system of coal car distribution of the railroad company did not violate the interstate commerce

law, and did not give any undue or unreasonable preference to the appellees except that the individual cars owned by them should be charged against the percentages of their mines, but that such individual cars should not be used by the independent operators. That on July 8, 1907, the court signed an order for the issuance of a mandamus requiring the railroad company, in case of car shortage, without discrimination, exception, or limitation, and upon conditions as favorable as those given to any other shipper, to furnish to the Pitcairn Coal Company for the transportation of its coal, and to those shippers in like condition as the Pitcairn Coal Company, their just and fair proportion of the total car supply on the said railroad at that time properly distributable by the railroad company on the Monongah division, and, in making the pro rata distribution of car supply for the shipment of coal from the mines on the railroad and to the shippers thereon, the railroad company should include in the available car supply as the basis of calculation for distribution to the Pitcairn Coal Company and all shippers on the Monongah division the individual cars of mine operators used on the railroad, and charge such individual cars against the percentage which the mines using such individual cars are entitled. That the railroad company and the Pitcairn Coal Company both appealed from the judgment of the court in the mandamus proceeding. The appeal of the railroad company and the appellees herein was accompanied by a supersedeas bond of the Pitcairn Coal Company. That an examination of the mandamus proceeding will show that the question of car distribution of the railroad among all the mines on its lines was before the court therein, not only as the system of car distribution affected the parties to the proceeding, but as it involved all other owners of mines along the railroad. That all the allegations of the petition as to the undue preferences presented an issue in which all owners of mines along the railroad were directly interested, and that the nature of the mandamus proceeding was such that any mine owner could have intervened therein and become a party. That evidence was taken in said proceeding as to the general system of car distribution, and that the president of the appellant testified therein as to the operation of the system in the Sommerset region in Pennsylvania. That the Pitcairn Coal Company and other independent operators, including the appellant, "were parties to an agreement by which these alleged preferences to the appellees should be brought before the court of the United States, and that as a member of the said organization promoting said litigation the Merchants' Coal Company (the appellant) did agree that the rights of the so-called independent operators should be presented to the court in a test case with the said Pitcairn Coal Company as relator, the object being by said agreement to have the rights of all the independent coal operators who had the same grounds of complaint against the system of the Baltimore & Ohio Railroad Company tried in one litigation, and to that end the said Merchants' Coal Company united in the agreement to employ counsel and did with others employ counsel to fight said litigation, and did contribute to the expense of said litigation." That the officers of the appellant took an active and open part in said litigation as representing the appellant and actually gave evi-

dence therein, and that said litigation was brought by a number of independent operators along the line of the railroad company, of which the appellant was one. And that the said litigation was as much under its control as under the Pitcairn Coal Company and was brought for the purpose of protecting the rights and claims of the appellant against the appellees quite as much as it was brought to protect the claims of the Pitcairn Coal Company.

That thereafter, on September 18, 1907, the appellant filed a petition before the Interstate Commerce Commission in which it is alleged that it operated mines in West Virginia and Pennsylvania along the lines of the Baltimore & Ohio Railroad Company, and complained of the system of car distribution enforced by such railroad company which permitted the use of fuel cars, foreign fuel cars, and individual cars without deducting the same from the percentages chargeable to the mines using the same, and which allowed a premium or addition to their percentages to shippers under certain circumstances, and charged that this system gave the persons enjoying the use of the arbitrary cars an undue and unreasonable preference. That the petition filed before the Interstate Commerce Commission also alleged that a part of the equipment owned by the Baltimore & Ohio Railroad Company and which should be supplied to shippers of coal upon its lines requiring the same is supplied by the said railroad company to the Cumberland & Pennsylvania Railroad Company for loading coal at the mines situated on the latter's railroad, a majority of which mines are owned by the Consolidation Coal Company, and that the depletion of its coal car equipment is contrary to the interstate commerce act, and that the railroad company thereby discriminates against the appellant. That the said petition filed before the Interstate Commerce Commission further charges that the railroad company aforesaid is interested in the Consolidation Coal Company (one of the appellees), which in turn owns the stock of other companies largely engaged in the shipping of coal, and asks for an investigation into this alleged interest, and whether such interest shows and accounts for its discrimination against the appellant. That the other companies referred to in said petition filed before the Commission whose stock is owned by the Consolidation Coal Company for the appellees herein, so that while said petition is only against the railroad company it is virtually directed against the appellees, as all the alleged preferences claimed against are in favor of the appellees. That every question presented by the said petition before the Interstate Commerce Commission, as will appear from an inspection of the exhibit filed with the bill of complaint, was fully adjudicated and determined by the Circuit Court in the Pitcairn Coal Company Case, and that if the appellant is permitted to prosecute said petition before the Interstate Commerce Commission, not only will the railroad company and the appellees be obliged to defend the method of car distribution of the railroad company by the same evidence which was adduced in the former proceeding, but any order that the Interstate Commerce Commission would be asked by appellant to pass would, if effective, nullify the rights of the appellants as adjudicated by the Circuit Court. That the prosecution of the petition before the

Interstate Commerce Commission, a hearing on which had been set down for October 8, 1907, would inflict irreparable injury upon the appellees, is simply vexatious and in manifest disregard of the binding efficiency of the adjudication by the Circuit Court, which had complete jurisdiction over the whole controversy, sought to be reopened, and that the court had jurisdiction to protect the effectiveness of its own adjudication through its jurisdiction over this their ancillary bill of complaint.

These are substantially the averments of the bill of complaint in this case.

The appellant did not file its answer, but at the hearing of the application for a preliminary injunction filed the affidavit of its president, Mr. Boswell, which showed: That prior to the institution of the Pitcairn Coal Company mandamus proceeding referred to in the bill of complaint, a meeting of coal operators operating on the lines of the Baltimore & Ohio Railroad Company was held in Baltimore to consider ways and means of securing a fair distribution of cars to the mines on the said railroad, and that the affiant was present at the meeting, representing the appellant, and agreed to contribute a certain sum of money toward the prosecution of the suit or suits for the enforcement of the rights of the coal operators to a fair and equal distribution of cars. There was no agreement at that time as to what suit or suits should be brought, but that subsequently the operators who contributed to the fund were advised that it was best to confine the effort to mandamus proceedings to force a fair and equal distribution of cars to be operated on the Monongah division alone of said railroad, and thereupon the mandamus proceeding was instituted, and in it the most, if not all, of the operators on the Monongah division were parties defendant to the mandamus proceeding. That the coal operations of the Merchants' Coal Company (appellant) were not and are not on the Monongah division of said railroad, and that the Merchants' Coal Company was not a party to the proceeding instituted by the Pitcairn Coal Company, and while it is true that its president and several officers and employés of the Merchants' Coal Company were called as witnesses by the Pitcairn Coal Company at the trial of the mandamus proceeding, that the Merchants' Coal Company was advised, prior to the trial of the mandamus proceeding aforesaid, that the judgment therein was not binding so far as the Merchants' Coal Company's rights were concerned, and that the mandamus, if issued, would not require the Baltimore & Ohio Railroad to furnish to the Merchants' Coal Company its fair and just proportion of cars. That there was no agreement between the Baltimore & Ohio Railroad Company or the other defendants to said mandamus proceeding and the plaintiff therein, so far as the affiant knows, that the case of Pitcairn Coal Company should be a test case, and that the Merchants' Coal Company never agreed with the Baltimore & Ohio Railroad Company or any one else that the case of the Pitcairn Coal Company, above referred to, should be a test case. That he, the affiant, is advised that the judge of the Circuit Court of the United States for the District of Maryland in the case of Pitcairn Coal Company v. Baltimore &

Ohio Railroad Company et al., above referred to, held that there was no sufficient evidence in that case to show that the allotment of cars to the Cumberland & Pennsylvania Railroad Company by the Baltimore & Ohio Railroad Company was an unfair allotment and that it worked an unjust discrimination against the Pitcairn Coal Company. That the said allotment of cars to the Cumberland & Pennsylvania Railroad Company is an unfair allotment and works an unjust discrimination against the Merchants' Coal Company, and affiant expects to be able to prove this fact before the Interstate Commerce Commission upon a hearing of its complaint above referred to, and that question is one of the main issues raised in the proceeding aforesaid before the Interstate Commerce Commission. That the petition for mandamus in the case of the Pitcairn Coal Company v. Baltimore & Ohio Railroad Company was confined to alleged unfair and unjust treatment by the Baltimore & Ohio Railroad Company of coal operators on the Monongah division of said road, and the question of how other operations in different territories from the Monongah division were treated was not an issue in that case, and that opportunity to investigate the conditions in other territories than the Monongah division was not offered at that time, although that during the progress of the case the methods of the Baltimore & Ohio Railroad Company in other districts were frequently referred to, and in said suit no opportunity was given to the Merchants' Coal Company to appear by counsel and introduce evidence or cross-examine witnesses. That affiant aided in every way he properly could the Pitcairn Coal Company in its litigation with the Baltimore & Ohio Railroad Company above referred to, and hoped that, if the Baltimore & Ohio Railroad Company was required to fulfill its duty with the Pitcairn Coal Company and the operators on the Monongah division, it might help the Merchants' Coal Company thereafter in asserting its right to have a fair and equal distribution in its territory. But affiant was advised at the time and understood that the judgment in the Pitcairn Case was not to be binding on the Baltimore & Ohio Railroad Company so far as the Merchants' Coal Company was concerned, and again denies that there ever was any agreement with any individual, firm, or corporation that the case of Pitcairn Coal Company v. Baltimore & Ohio Railroad Company should be a test case, so far as the rights of the Merchants' Coal Company were concerned, or should, in anywise affect or determine its rights.

No affidavits or answers were filed by the railroad company. The railroad company declined in writing to appeal or to join in this appeal.

The statement of facts in this case shows that the Pitcairn Coal Company, in pursuance of section 23 of the interstate commerce act (Act March 2, 1889, c. 382, § 10, 25 Stat. 862 [U. S. Comp. St. 1901, p. 3172]) instituted proceedings in the Circuit Court of the United States for the District of Maryland, in an action entitled, The United States of America ex rel. Pitcairn Coal Company v. Baltimore & Ohio Railroad Company et al., 154 Fed. 108, for the purpose of determining whether there had been a fair and equal distribution of car service

within the Monongah division. After a full and complete hearing, judgment was rendered in the Circuit Court, and both parties appealed from the judgment thus rendered, and that case, on appeal, is now pending in this court.

The appellant is engaged in operating coal mines on the Cumberland & Connellsville or Pittsburg divisions on the line of the Baltimore & Ohio Railroad Company. Subsequent to the institution of the mandamus proceeding hereinbefore mentioned, to wit, on the 18th day of September, 1907, the appellant filed a petition with the Interstate Commerce Commission, asking that body to take up and determine certain questions pertaining to the distribution of car service within a certain territory. This petition was filed in pursuance of section 13 of the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 383 [U. S. Comp. St. 1901, p. 3164]). Thereafter, to wit, on the 4th day of Ocber, 1907, the Circuit Court granted a preliminary injunction restraining the appellant from prosecuting its petition against the Baltimore & Ohio Railroad Company before the Interstate Commerce Commission, and restraining said railroad company from answering or defending such petition. On the 21st day of October, 1907, the case was heard on the bill, affidavits, and exhibits thereto, together with the affidavit of Thos. T. Boswell, president of the appellant, the Merchants' Coal Company, and after considering the allegations of the bill, as well as the exhibits filed therein, the court made an order continuing the preliminary injunction theretofore granted restraining appellant, its officers, attorneys, from further prosecuting its petition before the Interstate Commerce Commission until the further order of the court.

It is insisted by counsel for appellees "that the questions decided by the Circuit Court for the District of Maryland are precisely the same which it is sought to reopen before the Interstate Commerce Commission." It is also insisted that while the independent operators who were parties to the suit for mandamus in the proceeding before the Circuit Court were all engaged in coal operations in the Monongah division of the Baltimore & Ohio Railroad Company, yet the system of coal car distribution which was attacked in that proceeding was a system that was applied, not only to the Monongah division of the Baltimore & Ohio Railroad Company, but to all other divisions of said railroad company. It is also insisted that the appellant company employed counsel and was present at the hearing of the mandamus proceeding, and that certain of its officials then and there testified as to the manner of distribution of car service in the other divisions of the said railroad company. Counsel for appellees also insist that the questions sought to be raised by appellant in its petition before the Interstate Commerce Commission are similar to those passed upon by the Circuit Court in the mandamus proceeding, and therefore the action of the lower court in restraining appellant from proceeding before the Interstate Commerce Commission was proper. That it is not necessary to make every coal operator in the various divisions interested in the question a technical party, where the parties are numerous, and where the suit is an object common to all of them, and while all parties interested may not be made parties to the proceeding, yet, it is really a suit on behalf of the parties instituting

the same and all others interested in the same way. It is further insisted by counsel that the rights of the appellees are not only similar, but are identical with those of the appellant, and that the suit in the mandamus proceeding was instituted for the purpose of compelling the railroad companies to perform certain duties required by the interstate commerce act, which, when carried out under the rule of equality, would afford equal protection to all parties in a situation similar to that of the petitioners in the original proceeding.

While it appears from an inspection of the record that appellant and other parties similarly situated appeared and consulted with the plaintiff in the mandamus proceeding, and that some of the officers of the appellant company testified in said proceeding, nevertheless we are unable to find anything in the record in that case which tends to support the contention that the matter then being litigated was to be treated by the companies not parties to that suit as a "test case." It is not alleged by the appellees that the appellant entered into an agreement with the defendants to the mandamus proceeding that the litigation therein should be treated as a "test case." An agreement between the plaintiff in the mandamus proceeding and certain persons who were not parties thereto that the litigation in said suit should constitute a "test case" could have no binding effect upon the defendants in the absence of an agreement with the defendants. It is well settled that estoppels to be binding must be mutual. Even if the Pitcairn Coal Company should succeed ultimately in securing the relief sought to be obtained in the mandamus proceeding, nevertheless the appellant and others similarly situated, who were not parties to that proceeding, could not invoke the aid of the court in that proceeding to compel the defendants to grant them the relief to which they might be entitled under the provisions of the statute.

Suppose that the appellant should request the Baltimore & Ohio Railroad Company to grant it a distribution of car service in accordance with the judgment granted in the mandamus proceeding, and the railroad company should refuse to comply with such request, what would be the remedy, under the circumstances, to which appellant would be entitled? The railroad company could not be attached for contempt for a failure to comply with a request of this character from a person who was not a party to the proceeding in which the judgment was entered against the railroad company, and the writ of mandamus obtained on behalf of the Pitcairn Coal Company could not be used for the purpose of enforcing the rights of those who were not parties to the proceeding in the first instance. The remedy by mandamus is personal in its character, and from the very nature of things can only inure to the benefit of those who may be parties plaintiff in the proceedings in which it may be obtained. Nor would the appellant be entitled under any circumstances to be made a party to the mandamus proceeding after a judgment had been rendered, for the purpose of enforcing any rights that might be conferred upon it by the statute. A judgment obtained in a mandamus proceeding of this character can only be used as a precedent in a trial of another cause involving the same question, and cannot be pleaded as a bar in such action.

However, if the contention of appellee as to the effect of the judgment in the mandamus proceeding be correct, then it would be res judicata as to appellants and all other parties similarly situated, and in that event the appellees would not be entitled to equitable relief by injunction. In discussing this phase of the question the Supreme Court of the United States in the case of Litchfield v. Goodnow, Adm'r, 123 U. S. 549, 8 Sup. Ct. 210, 31 L. Ed. 199, says:

"The defense of prior adjudication is disposed of by the fact that Mrs. Litchfield was not a party to the suit in which the adjudication relied on was had. At the time of the commencement of the suit she was the owner of her lands and they were described in the bill, but neither she nor any one who represented her title was named as a defendant. She interested herself in securing a favorable decision of the questions involved as far as they were applicable to her own interests, and paid part of the expenses; but there was nothing to bind her by the decision. If it had been adverse to her interest, no decree could have been entered against her personally either for the lands or the taxes. Her lands were entirely separate and distinct from those of the actual parties. A decree in favor of or against them or their title was in no legal sense a decree in favor of or against her. She was indirectly interested in the result, but not directly. As the questions affecting her own title and her own liability for taxes were similar to those involved in the suit, the decision could be used as a judicial precedent in a proceeding against her, but not as a judgment binding on her and conclusive as to her rights. Her rights were similar to, but not identical with, those of the persons who were actually parties to the litigation."

The conduct of the appellant company as described in the affidavit of its president, Mr. Boswell, cannot be construed to mean that the agreement between parties to the mandamus proceeding was such as to estop those who were not made parties in such proceeding from instituting proceedings under section 23 before the Interstate Commerce Commission. While the rights of appellant in many respects were similar, they were not identical with the rights of the Pitcairn Company. It is not only alleged in the petition filed by the appellant before the Interstate Commerce Commission that there was an unequal distribution of car service, but it is also alleged that there was an inadequate supply of cars. Subsection of paragraph 2 of the petition filed before the Interstate Commerce Commission reads as follows:

"Which percentage or allotments of cars to complainant are entirely insufficient for its ordinary needs and requirements, are inequitable, unjust, and unfair."

This allegation raises a new and distinct issue which was not and could not within the scope of the pleading have been passed upon in the mandamus proceeding, and affords a strong reason why the court should not interfere by injunction with the proceedings pending before the Interstate Commerce Commission.

It further appears from the record that the petition filed before the Interstate Commerce Commission contains, among other things, an allegation to the effect that there was an unequal distribution of car service between the Monongah division and the division or divisions in which the appellant is operating, and this raises still another issue, which was not raised or considered in the mandamus proceeding and affords another reason why an interference with or a stay of the pro-

ceeding by injunction before the Interstate Commerce Commission would not be proper.

Section 23, in pursuance of which the mandamus proceedings were instituted, contains the following proviso:

"Provided, that the remedy hereby given by writ of mandamus shall be cumulative, and shall not be held to exclude or interfere with other remedies provided by this act or the act to which it is a supplement."

This proviso clearly indicates that it was the intention of Congress that the remedy by mandamus should be cumulative. In the case of People v. Superior Court of New York, N. Y., 10 Wend. (N. Y.) 285–294, the court in referring to the word "cumulative" said:

"The definition of the word 'cumulative' is that which augments by addition; that is added to something; in law, that augments as evidence, facts, or arguments of the same kind."

Webster:

"It is derived from the latin cumulo to heap, or cumulus a heap."

Again in the case of Regina v. Eastern Archipelago Co., 18 Eng. Law & Eq. 167–183, Judge Coolidge, says:

"The term 'cumulative' is not, I think, very correctly applied here; where one thing is cumulative on another, whether it be remedy, penalty, or power, we are speaking commonly of two things which are at least consistent and might, without incongruity, be applied at the same time, attachment and summary proceeding, fine and imprisonment, action for breach of covenant and ejectment for forfeiture. Two ways of doing the same thing where one or two can in fact be used may make a case of election, but they are hardly cumulative."

The learned judge in that case clearly draws the distinction between where one thing is cumulative on another and where there are two ways of doing the same thing, where only one of them in fact can be used.

Section 23 is a part of an act which is supplemental to the interstate commerce act, and was passed several years after the main body of the act which contained sections 9 and 13 was adopted. This section being intended to supplement the interstate commerce act, and containing as it does a plain proviso that the writ of mandamus shall be cumulative, clearly indicates that it was the intention of Congress that the remedy granted in section 13 should be treated as being consistent with the remedy granted by section 23, and that it could, without incongruity, be applied at the same time. That this was the purpose of Congress is evidenced by the fact that, in every instance where the remedy provided was intended to be exclusive, such intention was made clear and explicit by adding a proviso to that effect as is shown by the proviso contained in section 9. While two remedies are afforded shippers in section 9, it is expressly provided therein "that such person or persons shall not have the right to pursue both of said remedies, and must in each case elect which of the two methods of procedure therein provided for he or they shall adopt." Thus Congress clearly provided that while two remedies were given by section 9 they should not be treated as cumulative, and, in order that there might be no doubt as to the proper construction to be placed upon that section, it was clearly provided

that one seeking to avail himself of such remedies should be required to elect, and that the adoption of one excluded the other. However, there is another reason why one who has proceeded under section 23 is not precluded from pursuing his remedy under section 13. The proviso of section 23 not only declares the remedy by mandamus to be cumulative, but it also provides that the remedy by mandamus "shall not be held to exclude or interfere with any other remedy" provided by the act. This obviously means that one who proceeds by mandamus is not precluded from resorting to the other remedies afforded by the act.

If Congress had intended that the remedy afforded by section 23 was to be exclusive, it would have added a proviso similar to the one incorporated as a part of section 9, and not having done so it is manifest that it was the intention of Congress that the remedy provided by section 23 was not to be treated as exclusive, and especially inasmuch as it is expressly provided that the remedy granted therein shall be cumulative, and shall not be held to exclude or to interfere with other remedies granted by the act. Any other construction of this proviso would be in direct conflict with the plain provisions of the law, and, in view of this provision, we are of opinion that the court below was without power to restrain the appellant from proceeding before the Interstate Commerce Commission under the provisions of section 13, and that the court did not have jurisdiction of the subject-matter sought to be litigated in this proceeding.

The decree of the Circuit Court authorizing the issuance of the injunction herein is therefore reversed, and the cause is remanded to the lower court with directions to dismiss the bill filed herein.

Reversed.