**ARIZONA POWER CO.**

v.

**STUART.**

No. 13627.

United States Court of Appeals Ninth Circuit.

April 30, 1954.

H. Brian Holland, Asst. Atty. Gen., Robert B. Ross, Asst. Atty. Gen., Ellis N. Slack, Carolyn R. Just, Sp. Assts. to Atty. Gen., Jack D. Hayes, U. S. Atty., Phoenix, Ariz., for appellee.

Before HEALY and ORR, Circuit Judges, and LEMMON, District Judge.

LEMMON, District Judge.

Appellant brought suit in the District Court against the appellee to recover income taxes paid for the years 1943 and 1944. The appeal followed a judgment adverse to appellant.

The facts are undisputed. Appellant is the successor in interest to the Arizona Power Corporation, referred to herein as the Prescott Company, pursuant to a consolidation effected in 1945. The Prescott Company was a public utility concern engaged in the sale of electric energy and gas at rates established or approved by the Corporation Commission of the State of Arizona.

In the year 1935 Prescott Company issued 12,037.5 shares of its preferred stock. These shares had no par value but they were entitled to $100 on an involuntary dissolution and $105 in the event of a voluntary dissolution. On both types of dissolution the holder could receive accumulated dividends.

Each share of preferred was entitled to an annual dividend of $6 before dividends could be paid on the common stock, but this dividend accumulated only if and to the extent that there were net earnings. When the dividend was earned but not declared or paid it persisted as a charge on the company's earnings and assets senior to the common stock.[1]

Derald H. Ruttenberg, Chicago, Ill., Snell & Wilmer, Walter Linton, Mark Wilmer, Phoenix, Ariz., for appellant.

1. Pertinent provisions of Article Third of the Articles of Incorporation are as follows:

"(1) The holders of the $6 preferred stock shall be entitled to receive, but only out of the surplus profits of this corporation, dividends in each year at a rate determined by dividing the net earnings of the corporation for the next preceding calendar year by the number of shares of such $6 preferred stock outstanding at the end of that year, but in no event in excess of $6 per share in any one year. Such dividends shall be paid on March 1 of each year, commencing March 1, 1935. The term net earnings of the corporation as used herein shall be taken to mean its gross revenue, less all expenses of operation, all fixed charges, interest, all taxes, * * *. The term 'accumulated and unpaid dividends', as used herein, shall be deemed to mean (a) the

Prescott Company kept its books, computed its income, and paid its taxes, on a calendar year basis. During the year 1943 it paid $55,334.44 and during the year 1944, $44,194.32 as dividends on its preferred stock. We are here confronted with the question as to whether the Prescott Company may deduct these dividends for the purpose of computing its 16% corporate surtax.[2] Section 133 of the Revenue Act of 1942, 26 U.S.C.A., Int. Rev.Acts, page 200, defines preferred

aggregate of all dividends payable on each preceding March 1, calculated as provided in paragraph (1) of this Article Third, less the aggregate of all dividends theretofore paid and (b) an amount equal to dividends from March 1 next preceding at a rate per annum equal to the dividend payable on such next preceding March 1.

"(2) Dividends may be declared and set apart for or paid on the common stock at any time out of the surplus profits of the corporation, provided that no dividend shall at any time be paid or declared or set apart for payment upon the common stock until dividends calculated as aforesaid for all preceding calendar years shall have been fully paid upon the preferred stock nor unless a dividend of $6 per share shall first have been declared and paid or set apart for payment on the preferred stock during the current calendar year.

"(3) Upon the voluntary dissolution, liquidation or winding up of this corporation, the holders of the $6 preferred stock shall be entitled to receive out of the assets of this corporation one hundred and five dollars ($105) per share, and upon any involuntary dissolution, liquidation or winding up of this corporation, the holders of said $6 preferred stock shall be entitled to receive out of the assets of this corporation one hundred dollars ($100) per share in either case, plus all accumulated and unpaid dividends thereon on the date of such payment, before any distribution of the assets to be distributed shall be made to the holders of the common stock of this corporation. After payment to the holders of said $6 preferred stock of the full preferential amounts hereinabove provided for, the holders of said $6 preferred stock as such shall have no further right or claim to any of the remaining assets of this corporation, either upon any distribution of surplus assets or upon dissolution, liquidation or winding up, whether voluntary or involuntary. * * *

"(4) At the option of the Board of Directors of this corporation, this corporation may redeem all its $6 Preferred Stock, or any part thereof, at any time at One Hundred and Five Dollars ($105) per share, plus all accumulated and unpaid dividends thereon on the date of such redemption; * * *

"(5) Except for such purposes, if any, for which such right cannot at the time be denied or waived under the laws of the State of Arizona, the holders of the said $6 preferred stock shall have no voting rights or powers at the meetings of the stockholders of this corporation nor shall they be entitled to receive notices of such meetings.

"(6) Upon the vote of a majority of the total number of shares of stock then issued and outstanding and entitled to vote (or if a larger number or different proportion of shares is required by the laws of the State of Arizona, notwithstanding the above agreement of the stockholders to the contrary, then upon the vote of the larger number or different proportion of shares so required) this corporation may from time to time increase or decrease its authorized capital stock or any class thereof or create or authorize one or more other classes of preferred stock with such designation, preferences, privileges, voting powers, conditions, restrictions and liabilities as may be determined by said vote, which may be the same or different from the designations, preferences, privileges, voting powers, conditions, restrictions and liabilities of the classes of preferred stock of this corporation then authorized."

2. Section 26(h) of the Internal Revenue Code, 26 U.S.C.A., provides:

"In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

\* \* \* \* \* \* \*

"(h) [As added by Section 133, Revenue Act of 1942, supra, and amended by Section 116, Revenue Act of 1943, c. 63, 58 Stat. 21] Credit for dividends paid on certain preferred stock.

"(1) Amount of credit. In the case of a public utility, the amount of dividends paid during the taxable year on its preferred stock. For the purpose of the credit provided in this subsection the amount of dividends paid shall not include any amount distributed in the current taxable year with respect to dividends unpaid and accumulated in any taxable year ending prior to October 1, 1942. Amounts distributed in the current taxable year with respect to dividends unpaid and accumulated for a prior taxable year shall for

stock as being stock the dividends in respect of which are "cumulative, limited to the same amount, and payable in preference to the payment of dividends on other stock." Appellant, as the corporate successor of the Prescott Company, filed timely and sufficient claims for refunds for these calendar years. These claims were disallowed and this action to recover them followed.

The Collector contends that dividends are not cumulative if they depend upon net earnings; that to be cumulative the rate of return must be fixed or guaranteed in express terms so that it may not be changed by a vote of the board of directors.

1. The dividends payable on the preferred stock were cumulative.

The articles of incorporation provide, as noted, "The holders of the $6 Preferred Stock shall be entitled to receive, but only out of the surplus profits of this corporation, dividends in each year at a rate determined by dividing the net earnings of the corporation for the next preceding calendar year by the number of shares of such $6 Preferred Stock outstanding at the end of that year, but in no event in excess of $6 per share in any one year. Such dividends shall be paid on March 1 of each year, commencing March 1, 1935." The articles define net earnings (note 1, supra).

"Cumulative" means that which augments by addition; that which is added to something; [3] that which is superadded to another thing of the same character and not substituted for it.[4]

the purposes of this paragraph be deemed to be distributed with respect to the earliest year or years for which there are dividends unpaid and accumulated. The credit provided in this subsection shall be subtracted from the basic surtax credit provided in section 27.

"(2) Definitions. As used in this subsection and section 15(a)—

"(A) Public utility. The term 'public utility' means a corporation engaged in the furnishing of telephone service or in the sale of electric energy, gas, or water, if the rates for such furnishing or sale, as the case may be, have been established or approved by a State or political subdivision thereof or by an agency or instrumentality of the United States or by a public utility or public service commission or other similar body of the District of Columbia or of any State or political subdivision thereof.

"(B) Preferred stock. The term 'preferred stock' means stock issued prior to October 1, 1942, which during the whole of the taxable year (or the part of the taxable year after its issue) was stock the dividends in respect of which were cumulative, limited to the same amount, and payable in preference to the payment of dividends on other stock. Stock issued on or after October 1, 1942, shall be deemed for the purposes of this paragraph to have been issued prior to October 1, 1942, if it was issued (including issuance either by the same or another corporation in a transaction which is a reorganization, as defined in section 112 (g) (1), or a transaction to which section 112(b) (10), or so much of section

112(d) or (e) as relates to section 112 (b) (10), is applicable, or which is a transaction subject to Supplement R) to refund or replace bonds or debentures issued prior to October 1, 1942, or to refund or replace other preferred stock (including stock which is preferred stock by reason of this sentence), but only to the extent that the par or stated value of the new stock does not exceed the par, stated, or face value of the bonds or debentures issued prior to October 1, 1942, or the other preferred stock, which such new stock is issued to refund or replace. The determination of whether stock was issued to refund or replace bonds or debentures issued prior to October 1, 1942, or to refund or replace other preferred stock, shall be made under regulations prescribed by the Commissioner with the approval of the Secretary."

Section 105(b) of The Revenue Act of 1942, Int.Rev.Acts, page 172, provides:

"Surtax on corporations. Section 15 (relating to surtax on corporations) is amended to read as follows:

\* \* \* \* \* \* \*

"(a) Corporation surtax net income. For the purposes of this chapter, the term 'corporation surtax net income' means the net income \* \* \* minus, in the case of a public utility, the credit for dividends paid on its preferred stock provided in section 26(h). \* \* \*"

3. Merchants Coal Co. v. Fairmont Coal Co., 4 Cir., 160 F. 769, 779.

4. Mannington v. Hocking Valley Ry. Co., C.C., 183 F. 133, 154.

A preferred stockholder is not a creditor of the corporation in which he holds his stock. The dividends thereon are not payable absolutely but only out of the net earnings or net assets in excess of capital and only when and as declared. A dividend is that which the corporation has set aside from its net earnings or profits to be divided among the stockholders. The preference is limited to profits when earned.[5] The agreement to pay dividends on preferred stock is to be construed as an agreement to pay them from profits.[6] This is the rule unless corporations are expressly authorized by statute to resort to capital in payment of such dividends.

Dividends on preferred stock are ordinarily regarded as cumulative.[7] Appellee would tie the word "cumulative" to a fixed, determined rate. We agree with appellant that "cumulative" does not refer to the manner in which the rate is determined. The test is survival. Where, as here, the rate or amount is determinable with precision, in deciding whether it is cumulative it matters not if the rate varies from year to year with the amount of the net earnings. When once earned the dividend survives as a preferential right and is subject to the will of the board of directors only as to when it shall be declared and paid. If the dividend is earned but is passed it remains as a charge senior to that of other shares of stock.

This brings into focus the distinction between a cumulative and a non-cumulative dividend. A cumulative dividend survives as a senior charge on earnings. A non-cumulative dividend disappears if not declared and ceases to be a preferential right.

The word "limited" used in the statute suggests a fluctuating dividend. The statute expresses a maximum and is concerned only with the right of survival, not the rate or the method of its determination.

Appellee reminds us that there is no specific statement in the articles that the preferred stock is cumulative. But references are made in the articles to "accumulated and unpaid dividends" on the preferred stock (note 1, supra). Furthermore, Section (2) of the Third Article (note 1, supra) provides that dividends may not be declared or set apart for payment on the common stock until "dividends calculated as aforesaid for all preceding calendar years shall have been fully paid upon the Preferred Stock * * *." We hold that this provision effectively stamps the dividends on the preferred stock as being cumulative. It is unnecessary that the word "cumulative" be used. It is sufficient if the stipulated preferences make it such.[8]

2. The dividends were "limited to the same amount".

It is noted that Section (1) of Article Third of the articles of incorporation provides the dividend on the preferred may not exceed $6 per share for any one year. Though the dividend for any one year may be less than $6, depending upon the net earnings for the year, it may not exceed $6. In other words, $6 is the maximum dividend. It is "limited" to that amount.

The Arizona Supreme Court has defined "limited" as "narrow and restricted".[9] The word means within limits, circumscribed.[10] Here the preferred stockholder has no right to participate in net earnings beyond the $6 per year limit on that stock. The dividend was limited to that amount as a maximum in each year.

5. In re Culbertson's, 9 Cir., 54 F.2d 753, 757.

6. 13 Am.Jur. Sec. 691.

7. Hazel Atlas Glass Co. v. Van Dyk & Reeves, 2 Cir., 8 F.2d 716, 720, certiorari denied 269 U.S. 570, 46 S.Ct. 26, 70 L. Ed. 417.

8. Powers Foundry Co. v. Miller, 166 Md. 590, 171 A. 842.

9. Cheyney v. Smith, 3 Ariz. 143, 23 P. 680, 685.

10. Giles v. McKanna, Tex.Civ.App., 200 S.W.2d 709, 713.

 It is evident to us that Congress intended to mark an outside limit so as to exclude participating preferred stock. Congress was providing relief to corporations that were under obligation to pay dividends out of profits in determined amounts, which had some of the characteristics of interest upon indebtedness, but was excluding stock entitled to unlimited participation in profits.

3. The Treasury Regulation.

Treasury Regulations III, Section 29.26–5 provides in part that for the purposes of Section 26(h) of the Internal Revenue Code—

> "preferred stock means stock which was issued prior to October 1, 1942, * * * and which during the whole of the taxable year * * was stock non-participating as to earnings or profits either currently or in liquidation, the dividends on respect of which were cumulative and payable in preference to the payment of dividends on other stock. In addition, the preferred stock must be such that the rate of return is fixed and cannot be changed by a vote of the board of directors or by some similar method."

 Appellee leans upon this regulation and particularly upon the last sentence thereof as an interpretation of "limited to the same amount". But the Regulation itself is subject to interpretation. If it was its purpose to require that the dividend be constant to qualify as "limited to the same amount" there is present an attempted change of the statute. This, of course, may not be done administratively.[11] Therefore, the fair and logical construction of the Regulation is that the right to the dividend shall be a firm contractual right not subject to change "by a vote of the board of directors or by some similar method".

Reversed and remanded with directions to enter judgment in favor of appellant.

11. C. I. R. v. Landers Corp., 6 Cir., 210 F. 2d 188, 191; Federal Communications

Commission v. American Broadcasting Co., Inc., 74 S.Ct. 593.